Carney R. Shegerian, State Bar No. 150461
CShegerian@Shegerianlaw.com
Anthony Nguyen, State Bar No. 259154
ANguyen@Shegerianlaw.com
Cheryl A. Kenner. State Bar No. 305758
CKenner@Shegerianlaw.com
**SHEGERIAN & ASSOCIATES, INC.**
145 South Spring Street, Suite 400
Los Angeles, CA 90012
Telephone Number:  (310) 860-0770
Facsimile Number:  (310) 860-0771

Attorneys for Plaintiff RICARDO RUBIO
and all others similarly situated and aggrieved

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

RICARDO RUBIO, an individual; on behalf of himself and all others similarly situated,

Plaintiffs,

v.

CSC SERVICEWORKS, INC., a Florida Corporation; and DOES 1 to 100, inclusive,

Defendants.

**Case No. 2:20-cv-02873-SB-GJS**

**NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT AND AWARD OF ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES**

[*Filed concurrently with* (1) Supporting Declarations; (2) [Proposed] Order; and (3) [Proposed] Judgment]

Date:    August 27, 2021
Time:    8:30 a.m.
Ctrm.:   6C

Action Filed:    February 7, 2020

1

**MOTION FOR FINAL APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS**

**TO THE COURT, ALL PARTIES, AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 27, 2021, at 8:30 a.m. or as soon thereafter as the matter may be heard in Courtroom 6C of the above-captioned court, located at U.S. Courthouse, 350 West 1st Street, 6th Floor, Los Angeles, California 90012 , before the Honorable Stanley Blumenfeld Jr., Plaintiff Ricardo Rubio will, and hereby does, move this Court for an order as follows:

1.     To grant final approval of the class action and Private Attorney General Act, Cal. Lab. Code section 2698, et. seq. ("PAGA") settlement reached by the Parties, the terms of which are set forth in Settlement Agreement (the "Settlement"), and which the Court preliminarily approved by Order dated April 19, 2021;

2.     To find that this Action is properly certified as a class action on behalf of the following persons ("the Class"):  All current and former hourly, non-exempt employees who have worked in California for CSC ServiceWorks, Inc. at any time during the Class Period of February 7, 2016 through September 30, 2020.

3.     To find that named Plaintiff Ricardo Rubio is certified as the Class Representative of the Class and that attorneys Carney R. Shegerian, Anthony Nguyen, and Cheryl A. Kenner of Shegerian & Associates, Inc. are appointed as Class Counsel to the Class;

4.     To find that the Class Representative and Class Counsel has fairly and adequately represented the Class with respect to this litigation and the settlement;

5.     To find that the Settlement is fair, adequate, and reasonable and that Class Members were given adequate notice of the Settlement, which advised them of their rights to exclude themselves from the Settlement, and object to the Settlement, in a reasonable manner that satisfies the requirements of due process;

6.     To direct Defendant to provide the Settlement Administrator with sufficient funds to make all payments and distributions as required by the Settlement, including Seven Thousand Five Hundred Dollars ($7,500) to the Settlement Administrator from the Net Settlement Amount, and any excess amount owed to the

**MOTION FOR FINAL APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS**

Settlement Administrator not from the Gross Settlement Amount nor the Net Settlement Amount;

7.      To direct that the Settlement Administrator distribute settlement benefits to Participating Class Members from the settlement funds in accordance with the Settlement;

8.      To award reasonable attorneys' fees in the amount of $206,250 and costs in the amount of $19,867.75 to Shegerian & Associates, Inc., pursuant to Rules 23(h) and 54(d) of the Federal Rules of Civil Procedure, and to direct Defendant to pay such amount in accordance with the terms of the Settlement;

9.      To award Class Representative Ricardo Rubio an enhancement award in the amount of $5,000 and to direct Defendant to pay such amount in accordance with the Settlement;

10.     To enter a judgment providing that Class Members who did not timely exclude themselves from the Settlement have released their claims against Defendant and all released parties as set forth in the Settlement;

11.     To rule that Class Members who did not timely object to the Settlement are barred from prosecuting or appealing the Court's Order granting final approval of the Settlement;

12.     To approve the settlement of the claim for PAGA penalties in the amount of Fifteen Thousand Dollars ($15,000.00), of which seventy-five percent (75%), or $11,250, will be paid to the California Labor Workforce Development Agency ("LWDA") and twenty-five percent (25%) or $3,750.00, will be distributed to PAGA Members on a *pro rata* basis;

13.     To rule that all PAGA Members have released all claims for PAGA penalties during the PAGA period of December 4, 2018 through September 30, 2020, as set forth in the Settlement;

14.     To direct that the clerk of the Court enter the proposed final approval order and proposed final judgment; and

**MOTION FOR FINAL APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS**

15.     Without affecting the finality of the final judgment, reserve continuing jurisdiction over the Parties for the purposes of implementing, enforcing, and/or administering the Settlement or enforcing the terms of the judgment.

Good cause exists for the granting of this motion in that the proposed settlement is fair, adequate, and reasonable. This motion, which is unopposed by Defendant, is based on this notice; the accompanying Memorandum of Points and Authorities; the Declarations of (1) Plaintiff Ricardo Rubio; (2) Settlement Administrator Nathalie Hernandez and exhibits attached thereto; (3) Class Counsel Cheryl A. Kenner and exhibits attached thereto (**Exhibit A**—the Stipulation of Class Action Settlement and Release of Claims ("Settlement Agreement" or "Settlement"); **Exhibit B**—itemization of costs of Shegerian & Association, Inc.); **Exhibit C**—notice of proposed settlement to the Labor and Workforce Development Department; files and documents filed with this Court; and upon such further oral and/or documentary evidence and argument as may properly be presented to the Court at the time of the hearing on this matter. All definitions set forth in the Settlement Agreement, attached to the Declaration of Cheryl A. Kenner as **Exhibit A**, are incorporated herein by this reference.

Dated:  July 30, 2021              **SHEGERIAN & ASSOCIATES, INC.**


By: */s/ Cheryl Kenner*
Cheryl A. Kenner

Attorneys for Plaintiff Ricardo Rubio and all others similarly situated and aggrieved

**MOTION FOR FINAL APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS**

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................. 1

II.  STATEMENT OF FACTS .................................................................. 1

    A.  Procedural History ..................................................................... 1

    B.  The Parties Conducted Extensive Discovery and Investigation Efforts. .......... 2

    C.  The Parties Vigorously Litigated Their Positions on Plaintiff's Claims. ......... 2

    D.  The Parties Settled the Action in One Mediation ............................... 3

    E.  Preliminary Approval and Notice to the Class .................................. 3

    F.  Notice to the Labor and Workforce Development Agency ............................. 4

III. THE SETTLEMENT ........................................................................ 5

    A.  Class and PAGA Definition ....................................................... 5

    B.  Benefits Under the Settlement .................................................... 5

    C.  Release ............................................................................ 6

IV.  CLASS CERTIFICATION SHOULD BE GRANTED FOR PURPOSES OF FINAL APPROVAL. ............................... 8

V.   CLASS NOTICE HAS BEEN EFFECTUATED AND COMPORTS WITH RULE 23 AND DUE PROCESS. ............... 8

VI.  THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL. ................................................. 10

    A.  Relevant Criteria Support Final Approval of the Proposed Settlement .......... 11

        1.  The Settlement Offers Substantial Benefits when Balanced with the Strength of Plaintiff's Case. ....... 12

        2.  The Risk, Complexity, and Duration of Further Litigation ............... 13

        3.  The Risk of Maintaining Class Action Status Throughout the Case ........ 14

        4.  The Amount Offered in Settlement ..................................... 15

        5.  Extent of Discovery Completed and Stage of Proceedings ............... 16

        6.  Extent of Discovery Completed and Stage of Proceedings ............... 16

        7.  The Presence of a Government Participant ............................. 17

        8.  The Class Members' Reaction to the Proposed Settlement ............... 17

    B.  The Court Should Approve the PAGA Settlement ............................... 17

i

VII. THE COURT SHOULD AWARD ALL REQUESTS FOR ATTORNEYS' FEES AND COSTS AND THE CLASS REPRESENTATIVE'S PAYMENT.................................................. 19

A. Class Counsel's Fee Application Is Governed by California Law. ............... 19

B. Class Counsel Is Entitled to Reasonable Attorneys' Fees and Costs Under the California Labor Code and PAGA. ....................................... 21

   1. Class Counsel is Entitled to Attorneys' Fees Under the California Labor Code. .......................................................... 21

   2. Class Counsel is Entitled to Attorneys' Fees Under PAGA. ................... 22

C. Class Counsel's Requested Fee Award Is Reasonable Under the Percentage of the Fund Method.................................................... 23

   1. The Percentage Should Be Calculated Based on the Total Settlement Fund. ................................................................ 24

   2. The Result Obtained for the Class ................................................... 25

   3. The Effort Expended by Class Counsel ........................................... 26

   4. The Experience and Skill of Class Counsel ...................................... 27

   5. The Complexity of the Issues.......................................................... 28

   6. Class Counsel's Risk of Nonpayment.............................................. 28

   7. The Reaction of the Class .............................................................. 29

   8. Comparison with the Lodestar ...................................................... 30

D. Class Counsel's Requested Fee Award Is Reasonable Based on a Lodestar Cross-Check. .......................................................... 31

   1. Class Counsel's Hourly Rates Are Reasonable. ............................... 32

   2. Class Counsel's Hours Are Reasonable............................................ 33

   3. Application of a Positive Multiplier Is Appropriate. .......................... 35

E. Class Counsel's Request for Reimbursement of Costs Is Reasonable. .......... 36

VIII. THE COURT SHOULD AWARD THE CLASS REPRESENTATIVE A REASONABLE ENHANCEMENT PAYMENT.......................................................................... 37

IX. THE COURT SHOULD AWARD ILYM'S FEES. .................................... 38

X. DEFENDANT DOES NOT OPPOSE THIS MOTION. ............................... 38

XI. CONCLUSION ................................................................................ 38

ii

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Cases**

4

*Aguirre v. Genesis Logistics,*
No. SACV 12-00687 JVS (ANx), 2013 WL 10936035
at *2-*3 ................................................................................. 19

*Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431
(E.D.Cal.2013)......................................................................passim

*Bell v. Farmers Ins. Exchange*
(2004) 115 Cal App 4th 715, 726........................................... 37

*Blackwell v. Foley*, 724 F. Supp. 2d 1068 (N.D. Cal. 2010) ................... 34

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)........................... 24

*Bouman v. Block*, 940 F.2d 1211 (9th Cir. 1991) .......................... 33

*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir.
2008)....................................................................................... 32

*Carrington v. Starbucks Corp.*,
30 Cal. App. 5th 504 (2018) .................................................. 18

*Cellphone Termination Fee Cases*, 186 Cal.App.4th 1380
(2010)...................................................................................... 37

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008) ..................... 35

*Clark v. American Residential Services, LLC*
(2009) 175 Cal App 4th 785, 804.......................................... 37

*Clausen v. M/V New Carissa*, 339 F.3d 1049 (9th Cir. 2003) ................... 36

*Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th
663 (2006)............................................................................... 23

*D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379 (9th
Cir. 1990)................................................................................ 35

*Earley v. Super. Ct.*, 79 Cal.App.4th 1420 (2000)........................ 38

*Elder v. Schwan Food Co.*,
No. B223911, 2011 WL 1797254, at *5-*7 ........................... 18

*Espinoza v. Domino's Pizza, LLC*, No. EDCV-07-1601-
VAP(OPx), 2012 WL 5462550, at *2 (C.D. Cal. Nov.
7, 2012)................................................................................... 20

iii

*Fernandez v. Victoria Secret Stores, LLC*, No. CV-06-04149-
    MMM (SHx), 2008 WL 8150856 at *11 (C.D. Cal.
    Jul. 21, 2008) .................................................................25, 26, 30, 31

*Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997
    (9th Cir. 2002) ...............................................................................32

*Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629
    (1998)..............................................................................................35

*Fleming v. Covidien Inc.*,
    No. ED CV 10-01487 RGK (OPX), 2011 WL
    7563047, at *4 ...............................................................................18

*Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) ...................33

*Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553 (2004) ......................22, 29, 35

*Greene v. Dillingham Construction N.A., Inc.*, 101 Cal. App.
    4th 418 (2002) ...............................................................................36

*Guam v. Soc'y of Obstetricians & Gynecologists v. Ada*, 100
    F.3d 691 (9th Cir.1996) .................................................................34

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ......................11

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ........................................25, 33

*Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013
    WL 496358, at *2 (N.D. Cal. Feb. 6, 2013)..............................28, 30

*Hopson v. Hanesbrands Inc.*,
    Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900, at
    *24 .................................................................................................18

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th
    Cir. 2011).......................................................................................20

*In re Consumer Privacy Cases*, 175 Cal. App. 4th 545 (2009) ...............32

*In re Equity Funding Corp. Sec. Litig.*, 438 F.Supp. 1303
    (N.D. Cal. 1977) ............................................................................27

*In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (C.D.
    Cal. Jun. 10, 2005)....................................................................25, 28

*In re Immune Response Sec. Litig.*, 497 F.Supp.2d 1166 (S.D.
    Cal. 2007) ......................................................................................32

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir.
    2000)..............................................................................................29

*In re Omnivision Tech., Inc.*, 559 F.Supp.2d 1036 (N.D. Cal.
    2008)..............................................................................................30

iv

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ................................................................................ 24

*In re Pacific Enterprises Securities Litig.*, 47 F.3d 47 F.3d 373 (9th Cir. 1995) ...................................................................... 17

*In re Portal Software Secs. Litig.*, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007) ............................................................ 14

*In re Prudential Sec. Inc. Ltd. P'ships. Litig.*, 985 F.Supp. 410 (S.D. N.Y. 1997) ........................................................................ 21, 30

*In re Rite Aid. Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) ................................. 31

*In re Synocor ERISA Litigation*, 516 F.3d 1095 (9th Cir. 2008) ........................................................................................ 11

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ...................................................................... 29, 32

*Jordan v. Multnomah County*, 815 F.2d 1258, n.8 (9th Cir. 1987) ........................................................................................ 33

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) ........................................ 31, 35

*Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480 (2016) .................................... passim

*Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19 (2000) ............................ 21, 35

*Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752, at *17 ................................ 19

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998) ........................................................................................ 15

*Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470 (9th Cir. 1995) ........................................................................................ 20

*Mardirossian & Assocs., Inc. v. Ersoff*, 153 Cal. App. 4th 257 (2007) ........................................................................................ 31

*MBNA American Bank, N.A. v. Gorman*, 147 Cal. App. 4th 1 (2006) ........................................................................................ 32

*McGrath v. County of Nevada*, 67 F.3d 248 (9th Cir.1995) .................................... 31

*Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003) ................................................ 17

*Moore v. Indian Spring Channel Gold Mining Co.*, 37 Cal. App. 370 (1918) .................................................................... 22, 33

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) ................................ 34

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ........................................................................................ 8

v

*Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094 (2007)..................................................................................22

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ....................................................16, 17

*Nordstrom Com. Cases*, 186 Cal. App. 4th 576 (2010)..........................................................18

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982).....................................................................10, 13, 15

*Parkinson v. Hyundai Motor Am.*, 796 F.Supp.2d 1160 (C.D. Cal.2010) ....................................................................30, 32

*Perkins v. Mobile Housing Bd.*, 847 F.2d 735 (11th Cir. 1988) ..............................34

*PLCM Group, Inc. v. Drexler*, 22 Cal. 4th 1084 (2000)..........................................31

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000)..............................20, 24

*Press v. Lucky Stores*, 34 Cal. 3d 311 (1983) ..........................................................22

*Ramos v. Countrywide Home Loans, Inc.*, 82 Cal. App. 4th 615 (2000)......................................................................32

*Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513 (6th Cir. 1993) ..............................................................21

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009).............11, 12, 13, 33

*Ryan v. California Interscholastic Fed'n*, 94 Cal. App. 4th 1033 (2001)......................................................................23

*Saulic v. Symantec Corp.*, 596 F.Supp.2d 1323 (C.D. Cal. 2009)......................................................................8

*Serrano v. Priest*, 20 Cal. 3d 25 (1977) ............................................................24, 32

*Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734 (9th Cir. 2016)......................................................................36

*Staton v. Boeing Co.*, 327 F. 938 (9th Cir. 2003) .......................................10, 12, 38

*Steiny & Co. v. California Electric Supply Co.*, 79 Cal. App. 4th 285 (2000) ....................................................................31

*Stetson v. Grissom*, 821 F.3d 1157 (9th Cir. 2016).................................34, 36

*Thieriot v. Celtic Ins. Co.*, No. C-10-04462-LB, 2011 WL 1522385, at *6 (N.D. Cal. Apr. 21, 2011)..................................30

*Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112 (2012)..................................................18

vi

**MOTION FOR FINAL APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS**

*United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403 (9th Cir. 1990) ......................................................................33

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (C.D. Cal. 2010) ..........................................................................12

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (2002) ..............................21, 24, 29, 30

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ........................................13

*Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128 (1998)......................4, 6, 10, 35

*Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (2001)........................................................................20, 31, 35

*Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) ......................................16

**Statutes**

Business & Professions Code §§ 17200, *et seq.* ....................................2, 7

Code of Civil Procedure § 1021.5...........................................21, 22, 23

*Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030 (N.D. Cal. 2016) ........................................18

Labor Code § 1194...............................................................21, 22, 36

Labor Code § 218.5.................................................................21, 22

Labor Code § 2698, *et seq.*.............................................................2, 17, 19

Labor Code § 2699...................................................................18, 21

**Rules**

Federal Rules of Civil Procedure, Rule 23 ...............................8, 10, 13, 19

Local Rule 54 ...............................................................................36

**Treatises**

Manual for Complex Litig., 4th ed., § 21.7 ............................................24

vii

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

On April 19, 2021, this Court granted preliminarily approval of the proposed class action settlement between Plaintiff Ricardo Rubio ("Plaintiff" and/or the "Class Representative") and Defendant CSC ServiceWorks, Inc. ("Defendant") (collectively, "the Parties"). Dkt. No. 24. Through this unopposed motion, Plaintiff now seeks entry of an order granting final approval of the Stipulation of Class Action Settlement and Release of Claims ("Settlement" or "Settlement Agreement"). Declaration of Cheryl A. Kenner ("Kenner Decl.") Ex. A. In its Order Granting Motion for Preliminary Approval of Settlement, the Court certified the following Settlement Class:

> All current and former hourly, non-exempt employees who have worked in California for CSC ServiceWorks, Inc. at any time during the period beginning four years prior to the filing of this Complaint, i.e. February 7, 2016 through September 30, 2020.

Dkt. No. 24, p. 2.

If finally approved, the Settlement will create a non-reversionary settlement fund in the amount of $825,000 for 398 Class Members. The Settlement was reached through litigation, mediation, arms-length settlement negotiations, and extensive investigation and discovery which allowed Class Counsel to act intelligently, and Class Counsel supports the Settlement as being in the best interests of the Class.

The Settlement is fair, adequate, and reasonable, as it provides substantial benefits to the Class Members when balanced with the risks of continued litigation. The deadline for Class Members to object or opt out was June 19, 2021. Class Members' reaction to the proposed Settlement was overwhelmingly positive in that no Class Members objected to or opted out of the Settlement. Accordingly, Plaintiff respectfully requests that the Court grant final approval of the Settlement.

### II.    STATEMENT OF FACTS

#### A.    Procedural History

On February 7, 2020, Plaintiff Rubio filed a class and PAGA representative action

**MOTION FOR FINAL APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS**

in Los Angeles County Superior Court against Defendant on behalf of all hourly, nonexempt employees of Defendant within the State of California from February 7, 2016 through the present (the "*Rubio* Action"). Kenner Decl., ¶ 3. On March 27, 2020, Defendant removed the action to federal court. Dkt. No. 1.

The operative Complaint alleges the following causes of action for: (1) failure to provide compliant meal periods (and to pay required premiums); (2) failure to provide compliant rest breaks (and to pay required premiums); (3) failure to pay minimum wages; (4) failure to pay overtime wages; (5) failure to provide employees with accurate itemized wage statements; (6) failure to pay all wages owed every pay period; (7) failure to timely pay wages upon separation; (8) violation of California Business & Professions Code sections 17200, *et seq.*; and (9) civil penalties pursuant to California Labor Code sections 2698, *et seq.* ("PAGA"). Dkt. No. 1, Ex. A. The Complaint seeks damages, restitution, civil penalties, pre- and post-judgment interest, costs, attorneys' fees, and any other relief deemed appropriate by the Court. Dkt. No. 1, Ex. A.

**B.    The Parties Conducted Extensive Discovery and Investigation Efforts.**

Throughout the prosecution of the *Rubio* Action, the Parties engaged in extensive investigation, discovery, and discussions to assess the likelihood of class certification, the relative merits of the claims of Plaintiffs and Defendant's defenses to them, as well as the likelihood of recovery. Kenner Decl., ¶ 7. The Parties also exchanged a substantial amount of discovery informally, including classwide statistics, extensive classwide data in the form of timekeeping records and payroll data; and documents setting forth Defendant's applicable policies and procedures. Kenner Decl., ¶ 8.

**C.    The Parties Vigorously Litigated Their Positions on Plaintiff's Claims.**

As discussed herein, Plaintiff's counsel zealously prosecuted this Action and have thoroughly investigated and assessed the relative merits of all claims and defenses potentially and actually asserted. Class Counsels' efforts to investigate, prosecute, and engage in mediation have involved, among other efforts, (a) multiple meetings and conferences with Plaintiff; (b) exchange of discovery informally; (c) analyzing the legal

1   positions taken by Defendant; (d) investigating the viability of class treatment of the
2   claims asserted in this Action; (e) talking to class members; (f) researching applicable
3   law as to the actual and potential claims and defenses asserted in the Action; (g)
4   assembling and analyzing data to evaluate exposure and calculate damages; (h) analyzing
5   liability as to the alleged causes of action and evaluating potential classwide damages
6   both internally and by retaining an expert; (i) engaging in a full, extended day of
7   mediation and multiple subsequent arms'-length negotiations; and (j) undertaking all
8   efforts to effect the agreed upon terms of the Settlement. Kenner Decl., ¶ 8.

9           **D.    The Parties Settled the Action in One Mediation.**

10          One mediation session took place in this litigation. After Plaintiff retained an
11  expert to analyze the classwide data to assess the reasons for and degrees of
12  noncompliance with the alleged Labor Code violations, the Parties engaged in an arms'-
13  length mediation on August 20, 2020 with respected employment mediator Lisa Klerman.
14  Kenner Decl., ¶ 9. With the benefit of the foregoing experience and discovery at the time
15  of the mediation, Class Counsel were well-placed to properly evaluate the strengths and
16  weaknesses of their respective claims and defenses, the value of the proposed Settlement,
17  and the risks and expenses of continued litigation through trial and appeal. Kenner Decl.,
18  ¶ 9. The Parties settled at the conclusion of the mediation and then jointly drafted and
19  executed a Memorandum of Understanding. Kenner Decl., ¶ 9. Thereafter, the Parties
20  jointly drafted the Class Action Settlement Agreement ("Settlement Agreement"),
21  attached as Exhibit A to the Declaration of Cheryl A. Kenner.

22          **E.    Preliminary Approval and Notice to the Class**

23          On March 4, 2021 Plaintiff filed his Motion for Preliminary Approval. Dkt. No.
24  22. On April 19, 2021, the Court granted the motion on the papers and then entered the
25  Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement
26  (the "Order"). Dkt. No. 24. The Parties notified the Class about the settlement through
27  the settlement administrator, ILYM Group, Inc. ("ILYM"), whom the Court approved to
28  administer the settlement. Declaration of Nathalie Hernandez ("Hernandez Decl.") ¶ 3;

**MOTION FOR FINAL APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS**

*see* Dkt. No. 24, ¶ 2. ILYM received a Class List of 398 individuals from Defendant. Hernandez Decl., ¶ 5. This Class List contained all required information. Hernandez Decl., ¶ 5. ILYM processed and updated the mailing addresses using the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. Hernandez Decl., ¶ 6. The NCOA contains changes of address filed with the U.S. Postal Service. In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA was utilized in connection with the mailing of the Notice Packets. Hernandez Decl., ¶ 6. Then, ILYM translated the Class Notice into Spanish. Hernandez Decl., ¶ 4.

On May 20, 2021, ILYM mailed the Notice Packet, via U.S. First-Class Mail, to all 398 individuals contained in the Class List. Hernandez Decl., ¶ 7, Ex. A. After Notice Packets had been mailed, some Class Members contacted Class Counsel with questions about the Notice Packet they received; Class Counsel received no calls from putative Class members concerned that they were omitted from the Settlement because they hadn't received a Notice Packet. Kenner Decl., ¶ 15. Of the 20 Class Members whose Notice Packets were returned as undeliverable, ILYM researched their addresses and then obtained new addresses for 12 of them. For those 12, ILYM re-mailed those Notice Packets. Hernandez Decl., ¶¶ 7–9.

The Response Deadline to object or opt-out of the Settlement was June 19, 2021, and the Extended Response Deadline on all remailed notices has since expired. Hernandez Decl., ¶¶ 9, 11–12. ILYM received zero timely Requests for Exclusion from the Class of 398 individuals, which represents a 100% participation rate; to-date, ILYM also didn't receive any objections from Class Members to the settlement nor disputes to Total Weeks Worked. Hernandez Decl., ¶¶ 12, 13. Therefore, 398 Participating Class Members comprise the Settlement Class. Hernandez Decl., ¶ 13.

**F.    Notice to the Labor and Workforce Development Agency**

As required by the PAGA, on July 22, 2021, Plaintiff's counsel gave notice to the Labor and Workforce Development Department of the proposed settlement, the

confirmation of which is Exhibit C to the Declaration of Cheryl A. Kenner. Kenner Decl., ¶ 6; Ex. C. To date, the LWDA has not contacted Class Counsel regarding this proposed settlement or distribution. Kenner Decl., ¶ 6.

## III.    THE SETTLEMENT

### A.    Class and PAGA Definition

The Class consists of "All current and former hourly, non-exempt employees who have worked in California for CSC ServiceWorks, Inc. at any time during the period of February 7, 2016 through September 30, 2020." Settlement Agreement, ¶ 6.

Additionally, PAGA Members consist of "all current and former hourly-paid non-exempt employees who have worked in California for CSC ServiceWorks, Inc. at any time during the period of December 4, 2018, one year prior to the date Plaintiff submitted the LWDA Letter, through September 30, 2020." Settlement Agreement, ¶ 19.

### B.    Benefits Under the Settlement

Pursuant to the Settlement Agreement and the Court's April 19, 2021 Order, the Gross Settlement Amount is $825,000, which includes Individual Settlement Payments to all Participating Class Members; $15,000 allocated to PAGA penalties, out of which $11,250 (75%) will be paid to the LWDA and $3,750 (25%) to PAGA Members; $5,000 for the Class Representative's Enhancement; a cap of $7,500 for the settlement administrator's costs, and attorneys' fees to Class Counsel of no more than $206,250, and actual litigation costs not to exceed $25,000. Kenner Decl., ¶ 12. The actual litigation costs are $19,867.75, and thus $5,132.25 less, which shall remain in the Net Settlement Amount for distribution to the Class. Kenner Decl., ¶¶ 12, 23, Ex. B.

This is a cash settlement with no reversionary aspect. The Net Settlement Amount is the portion of the Gross Settlement Amount allocated for payment of Individual Settlement Payments to Participating Class Members (including employee payroll taxes but excluding employer payroll taxes), which is calculated based on the amount remaining from the Gross Settlement Amount after deduction of all court-awarded attorneys' fees and costs, the Class Representative's Enhancement Payment, settlement

administration costs, and PAGA penalties. Kenner Decl., ¶ 13. The Individual Settlement Amount to be paid to each Participating Class Member will be paid from the Net Settlement Amount and shall be determined based on the Class Members' respective number of Total Weeks Worked during the Class Period.

Participating Class Members' Individual Settlement Payments will be allocated 20% to wages, which shall be reported on W-2s; Defendant's share of employer taxes on this wage portion will be paid in addition to the Gross Settlement Amount. The remaining allocation shall be 50% to penalties and 30% to interest, and as such, shall be reported on 1099s for which Defendant will not owe any employer and employee payroll taxes, as Participating Class Members will be responsible for paying any taxes owed. Assuming that the Court awards all fee applications, which Defendant has agreed to not oppose in the Settlement Agreement, a total of **$575,132.25** will remain in the Net Settlement Amount to be distributed among all 398 Participating Class Members. Kenner Decl., ¶ 12; Hernandez Decl., ¶ 14. Assuming the full amount of $25,000 reserved for attorneys' litigation costs were awarded, the maximum Class Member allocation would be estimated to be $3,266.29, and the average settlement amount would be estimated to be $1,432.16. Hernandez Decl., ¶ 14. However, since Class Counsel is seeking a lesser award of only $19,867.75, both of these amounts—the maximum and average—will be higher based on the surplus of approximately $5,132.25 reserved for Class Counsel's costs not ultimately incurred. Kenner Decl.**,** ¶ 12, 23. Here, the average settlement payment to be paid to Participating Class Members is not a nominal sum, further demonstrating the favorable outcome of this Settlement.

## C. Release

In exchange for payment, Participating Class Members expressly release:

all claims, rights, demands, liabilities, and causes of action, whether statutory, in tort, contract, or otherwise, alleged in the LWDA Letter and/or operative Complaint in this Action or that could have been alleged based on the facts pleaded in the LWDA Letter and/or the operative Complaint in this Action, arising during the period from February 7, 2016 through September 30, 2020, including but not limited to claims under the California Labor

**MOTION FOR FINAL APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS**

Code, California Industrial Welfare Commission Wage Orders, regulations, and/or other provisions of law, for failure to pay wages (including minimum wages, overtime and double time wages), failure to provide compliant meal periods and associated premium pay, failure to provide compliant rest periods and associated premium pay, failure to provide compliant wage statements, failure to timely pay wages upon termination of employment, failure to timely pay wages during employment, failure to maintain requisite payroll records, unreimbursed business expenses, and unfair or unlawful business practices in violation of California Business and Professions Code § 17200, *et seq.* "Class Release" also includes any claims, rights, demands, liabilities, damages, wages, benefits, expenses, penalties, debts, obligations, attorneys' fees, costs, any other form of relief or remedy in law, equity, or whatever kind or nature, and causes of action, that could potentially arise from the receipt of any monies as a result of this Settlement by any member of the Settlement Class.

Settlement Agreement, ¶ 9.

Additionally, in exchange for payment, the State of California and each PAGA Member expressly release:

Defendant, and all of its parents, subsidiaries, affiliates, shareholders, agents, predecessors, successors, and assigns, including Defendants' respective pension, profit sharing, savings, health, and other employee benefit plans of any nature, from all claims for PAGA and California Labor Code section 558 penalties that arise out of or relate to the factual allegations in the LWDA Letter and pled in the Operative Complaint, from December 4, 2018 through September 30, 2020, including: failure to pay wages (including minimum wages, overtime and double time wages), failure to provide compliant meal periods and associated premium pay, failure to provide compliant rest periods and associated premium pay, failure to provide compliant wage statements, failure to timely pay wages upon termination of employment, failure to timely pay wages during employment, failure to maintain requisite payroll records, and unreimbursed business expenses. . .

Settlement Agreement, ¶ 22.

The Class Representative enters into a broader release of claims than Participating Class Members, in addition to the express release of claims set forth in the Settlement Agreement. Settlement Agreement, ¶ 43c.

7

## IV.    CLASS CERTIFICATION SHOULD BE GRANTED FOR PURPOSES OF FINAL APPROVAL.

The Court determined in its preliminary approval order that the Settlement Class meets the requirements for class certification under Rule 23(a)'s numerosity, typicality, commonality, and adequacy requirements and Rule 23(b)(3)'s predominance and superiority standards. Dkt. No. 24, ¶¶ 10–11. Having determined that the proposed Settlement satisfies these requirements, the Court must now consider whether the proposed settlement is fair, adequate, and reasonable for the Class. Dkt. No. 24, ¶ 4.

## V.    CLASS NOTICE HAS BEEN EFFECTUATED AND COMPORTS WITH RULE 23 AND DUE PROCESS.

Before final approval of a class action can issue, notice of the settlement must be provided to the class. Fed. R. Civ. P. 23(e)(1). Rule 23 requires that the class receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice to the class must be "reasonably calculated under all the circumstances, to apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950); *Saulic v. Symantec Corp.*, 596 F.Supp.2d 1323, 1327 (C.D. Cal. 2009).

The Court's Order found that the form of the notice and method of giving notice "constitute the best notice practicable under the circumstances and constitute valid, due, and sufficient notice to all members of the Settlement Class" and ordered the Settlement Administrator to follow particular procedures and deadlines, as set forth in the Settlement Agreement, to mail the court approved Notice of Class Action Settlement and Notice of Estimated Individual Settlement Payment (collectively, the "Notice Packet") to Class Members, to re-send returned or undeliverable notices, and to submit a declaration attesting to the total costs incurred and anticipated to be incurred to finalize the settlement for approval by the Court. Dkt. No. 24, ¶¶ 8–10. The Order also set forth a schedule and

1  procedures for submitting requests for exclusion and objections and set the final approval
2  hearing on August 27, 2021. Dkt. No. 24, ¶¶ 12–15.

3      On May 7, 2021, ILYM received from Defendant the Class List of 398
4  individuals, previously estimated to be 375 at the time of settlement and preliminary
5  approval, including their names, social security numbers, last known mailing addresses,
6  last known telephone numbers, employment dates, and the total number of applicable
7  workweeks worked. Hernandez Decl., ¶ 5. ILYM then processed those names and
8  addresses through the National Change of Address ("NCOA") Database and updated any
9  on file with the United States Postal Service ("USPS"). Hernandez Decl., ¶ 6. After ILYM
10 received the text for the Notice Packets from counsel, ILYM formatted a draft of the
11 Notice Packet and translated it into Spanish. Hernandez Decl., ¶ 4.

12     Upon approval from all counsel, on May 20, 2021, ILYM mailed the Notice
13 Packets to the 398 individuals Defendant identified as Class Members on the Class List,
14 via U.S. First-Class mail. Hernandez Decl., ¶ 7. ILYM established and maintained a toll-
15 free phone line to answer any questions or concerns class members may have had with
16 the Settlement. Hernandez Decl., Ex. A.

17     Since mailing the Notice Packets to the Class Members, ILYM received a total of
18 eight Notice Packets returned by the USPS with undeliverable addresses for which no
19 forwarding address could be found upon reasonable search. Hernandez Decl., ¶ 10. As of
20 July 22, 2021, 20 Notice Packets were returned by the post office, for which 12 ILYM
21 was able to obtain a current address through skip tracing. Hernandez Decl., ¶ 8. ILYM
22 remailed those 12 Notice Packets. Hernandez Decl., ¶¶ 8, 9.

23     After the Notice Packets had been mailed, several putative Class Members
24 contacted Class Counsel via telephone regarding the Notice of Proposed Class Action
25 Settlement and Final Approval Hearing and details about the lawsuit. Kenner Decl., ¶ 15.
26 Class Counsel answered all of their questions regarding the Notice and explained their
27 options under the proposed settlement. Based on experience from prior cases, it is
28 exceedingly rare—but did occur here—that no persons contacted Class Counsel claiming

9

**MOTION FOR FINAL APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS**

to have been omitted from the Class because they did not receive a Notice Packet. Kenner Decl., ¶ 15.  It is significant that no one called with concerns of being omitted from the Class and no one submitted disputes to their Total Weeks Worked, as these are good indicators that Defendant's records of the Class are reasonably accurate and ILYM's efforts in ensuring delivery of Notice Packets were successful. Kenner Decl., ¶ 15.

The deadline for Class Members to object to or request to be excluded from the settlement was June 19, 2021, which was thirty (30) days from May 20, 2021, the date the Settlement Administrator mailed the Class Notices. Hernandez Decl., ¶¶ 7, 11. ILYM received zero Requests for Exclusion, valid or otherwise, from the 398 Class Members. Hernandez Decl., ¶¶ 11, 13. Accordingly, the Settlement Class is made up of 398 Participating Class Members, which represents a 100% rate of participation in the settlement. Hernandez Decl., ¶ 13. Moreover, no Class Members have objected to the Settlement. Hernandez Decl., ¶ 12. The 100% participation in this class settlement reflects the favorable terms upon which it was settled. Similarly, it is highly significant that there are no objectors to the Settlement.

## VI.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL.

Pursuant to Rule 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. Proc. 23(e). In order to approve a final settlement in a class action, the district court must find that the proposed settlement is fundamentally fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(l)(c); *Staton v. Boeing Co*., 327 F. 938, 952 (9th Cir. 2003). Although the Court possesses "broad discretion" in issuing a final determination that a proposed class action settlement is fair, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the Parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating Parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

**MOTION FOR FINAL APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS**

Courts in the Ninth Circuit have "long deferred to the private consensual decision of the Parties." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (citing *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998)). In the end, "[s]ettlement is the offspring of compromise; the question [the court] addresses is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* at 1027. In considering whether to grant final approval of a class action settlement, the Ninth Circuit has noted that "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Synocor ERISA Litigation*, 516 F.3d 1095, 1011 (9th Cir. 2008).

The Settlement was reached only after the exchange of sufficient and substantial discovery including classwide statistics, extensive classwide data in the form of timekeeping records and payroll data; and documents setting forth Defendant's applicable policies and procedures. Kenner Decl., ¶ 10. Plaintiff also retained an expert to analyze a sample of class members' timekeeping and payroll records and provide an expert report regarding the observed rates of various alleged Labor Code violations. There was an extended, full-day, arm's length mediation session with the assistance of experienced mediator Lisa Klerman. Thus, Plaintiff and Class Counsel had ample information to fully assess the strengths and weaknesses of Plaintiff's claims against Defendant and assess whether the proposed Settlement is fair, adequate, and reasonable. Kenner Decl., ¶ 10.

Class Counsel, who have significant experience in wage and hour class action litigation, support the Settlement because it achieves an outstanding result for the Settlement Class, particularly in light of the risks of continued litigation. Kenner Decl., ¶ 11. Accordingly, the proposed Settlement is entitled to a presumption of fairness.

## A.    Relevant Criteria Support Final Approval of the Proposed Settlement

In deciding whether to grant final approval of a class action settlement, courts consider several factors, including: (l) the strength of the plaintiff's case; (2) the risk, complexity, and duration of further litigation; (3) the risk of maintaining class action

11

status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez*, 563 F.3d at 963; *see also Staton*, 327 F .3d at 959. The list of factors isn't exhaustive and should be tailored to each case. *Id.* at 959. Applied to this case, the relevant criteria support final approval of the proposed Settlement.

### 1. The Settlement Offers Substantial Benefits when Balanced with the Strength of Plaintiff's Case.

The benefits of settlement and Plaintiff's chances of success are typically evaluated together. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (C.D. Cal. 2010) ("An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement.") (internal quotation mark omitted).

The Settlement provides substantial monetary relief for 398 Class Members. Each Class Member will receive from the total recovery of $825,000 an average settlement payment of $1,432.16, with the maximum settlement allocation estimated to be $3,266.29. Hernandez Decl., ¶ 14. Both of these figures will be slightly higher, however, based on the surplus of approximately $5,132.25 reserved for Class Counsel's costs not ultimately incurred. Kenner Decl., ¶ 12.

The quality of the Settlement is apparent from its relationship to the potential recovery on Plaintiff's strongest claim, the regular rate overtime claim. At the mediation, Plaintiff estimated that Defendant's exposure for the total unpaid wages based on the regular rate overtime claim was approximately $300,000. In total with the other claims alleged, Plaintiff estimated the maximum damages for settlement purposes, excluding attorneys' fees, penalties and interest, to be approximately $3.16 million. Kenner Decl., ¶ 14. With that, the $825,000 settlement represents 26% of the potential liability.

| Claim | Estimated Damages for Settlement Purposes |
|---|---|
| Failure to Provide Meal Breaks | $        474,635.65 |

**MOTION FOR FINAL APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS**

| | | |
|---|---|---|
| Failure to Provide Rest Breaks | $ | 474,635.65 |
| Failure to Pay Minimum Wages | $ | 1,164,092.68 |
| Failure to Pay Overtime Wages | $ | 750,000.00 |
| Failure to Provide Accurate Wage Statements | $ | 121,825.00 |
| Waiting Time Penalties | $ | 172,704.00 |
| **TOTAL (excluding attys' fees, penalties, and interest):** | **$** | **3,157,892.97** |

Defendant contends, however, that this case must proceed to arbitration on an individual basis and contests liability and the propriety of certification. Defendant has represented that it is prepared to vigorously defend against Plaintiff's claims and oppose certification if the action were not compelled to arbitration and were not settled. Kenner Decl., ¶ 14. However, the law on certain issues in this case is both unsettled and uncertain.

Further, the benefit to the Class in avoiding uneconomical individual litigation and the significant risk that this Court would deny class certification is obviated by the Settlement, particularly in light of certification standards under Federal Rule of Civil Procedure, Rule 23, as articulated in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Further, even if Plaintiff were to obtain certification and ultimately prevail on the merits, a legitimate controversy exists as to each cause of action and Plaintiff recognizes that proving the amount of wages due to each individual Class Member would be expensive and time consuming. In addition, continued litigation would inevitably delay payment to the Class. The fact that a settlement will eliminate delay and further expenses strongly weighs in favor of approval. *Id.*; *see Rodriguez,* 563 F. 3d at 966.

## 2. The Risk, Complexity, and Duration of Further Litigation

Another factor in assessing the fairness of the proposed settlement is the complexity, expense, and likely duration of this lawsuit had settlement not been achieved. *Officers for Justice*, 688 F.2d at 625. As explained above, Defendant was prepared to vigorously litigate the case through trial and appeal, as it had indicated at the outset of the litigation with its stated plan of filing a motion to compel arbitration, which if granted, would extinguish all class claims. Plaintiff's Counsel has extensive experience in wage and hour class action litigation and knows that any case involving wage and hour claims

13

against a large corporate employer can, and often does, lead to costly litigation that goes on for years. Kenner Decl., ¶ 14.

Absent settlement, the next steps in the case likely would include Defendant's motion to compel arbitration, and if that was denied, then Plaintiff's motion for class certification and Defendant's motion for summary judgment regarding whether Defendant properly excluded certain bonuses from its regular rate calculations and the Parties' respective efforts to obtain review of adverse decisions both at certification and in subsequent merits determinations on the myriad claims. More specifically, these risks include: (1) the risk that Plaintiffs would be unable to proceed on a classwide basis; (2) the risk that Plaintiffs would be unable to show that the action would be manageable given the variety of nonexempt employee positions; (3) the risk that discrepancies between the Plaintiff's testimony and that of other putative class members would conflict, precluding class certification or prompting decertification; (4) the risk that Plaintiff would be deemed an inadequate class representative; (5) the risk that even if Plaintiffs were to certify the proposed class they may ultimately prove unsuccessful at trial, including the risk that Plaintiff could not prevail on his derivative claims; (6) the risk that class members would lose some or all of the claims on the merits; and (7) the risk of prolonged litigation, and almost certain appeal if Plaintiff were successful at trial.

Thus, significant risk remained as to the potential recoveries on each of the claims alleged and considerably more risk, effort, time and expense would be entailed in taking these steps, all of which would cause significant delays in obtaining any relief for Class Members. *See In re Portal Software Secs. Litig.*, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007) ("Additional consideration of increased expenses of fact and expert discovery and the inherent risks of proceeding to summary judgment, trial and appeal also support the settlement").

Accordingly, this factor supports final approval of the Settlement.

### 3. The Risk of Maintaining Class Action Status Throughout the Case

Plaintiff faced the risk that class action status, even on the one regular rate

14

overtime claim, would not be obtained and even if it was, that it might be lost upon Defendant's efforts to appeal. Even if Plaintiff were able to maintain class action status on any one claim, a determination would have to be made regarding how to handle damages determinations for the remaining putative class members. These risks in obtaining and maintaining class certification, and the uncertainty attendant to the further litigation of the partially certified claim favors settlement.

### 4. The Amount Offered in Settlement

The next factor relevant to a consideration of the reasonableness of the settlement is the amount offered by the defendant. As the Ninth Circuit has noted, "It is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. Rather, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" Id. at 624 (citations omitted). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is...inadequate and should be disapproved.'" *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998).

The proposed settlement offers a substantial recovery to Class Members given the risks of pursuing this case through trial. All Participating Class Members will receive a *pro rata* share of the Net Settlement Amount based upon the number of weeks they worked during the Class Period. Settlement Agreement, ¶ 43a. Assuming that the Court awards all fee applications, which Defendant has stipulated to not oppose in the Settlement Agreement, a total of **$575,132.25** will be remain in the non-reversionary Net Settlement Amount to be distributed among all 398 Participating Class Members. Kenner Decl., ¶ 12; *see* Hernandez Decl., ¶ 14. With that and excluding the surplus of reserved costs not incurred, the maximum Class Member allocation is estimated to be greater than $3,266.29; and the average Class Member allocation is estimated to be greater than

**MOTION FOR FINAL APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS**

1   $1,432.16. Hernandez Decl., ¶ 14.

2       This is a significant recovery by any measure but is especially so in light of the
3   risks described above. A comparison of the average settlement award here to other actions
4   in the Ninth Circuit for wage and hour violations highlights the significant success
5   achieved by Class Counsel. *See, e.g., Barbosa v. Cargill Meat Solutions Corp.*, 297
6   F.R.D. 431, 448-51 (E.D.Cal.2013) (court deemed recovery of $1,290,000 for 1,837
7   employees a "favorable result" and awarded fees amounting to 33 1/3% of the total
8   settlement). The Court should find that the results achieved on behalf of the Class through
9   this Settlement are excellent.

10              **5.  Extent of Discovery Completed and Stage of Proceedings**

11      Final approval is favored for the additional reason that substantial investigation
12   and discovery were completed prior to mediation efforts and settlement, giving Plaintiff
13   and Class Counsel a clear understanding of the strength and weaknesses of the case, and
14   the risks of continuing to litigate. "'The extent of discovery may be relevant in
15   determining the adequacy of the Parties' knowledge of the case.'" *Nat'l Rural Telecomm.*
16   *Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). "A court is more likely to
17   approve a settlement if most of the discovery is completed because it suggests that the
18   Parties arrived at a compromise based on a full understanding of the legal and factual
19   issues surrounding the case.'" *Id.* The more discovery completed, the more the Parties
20   have "a clear view of the strengths and weaknesses of their cases.'" *Young v. Polo Retail,*
21   *LLC*, No. C-02-4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007).

22      As shown above, the Parties agreed to a settlement only after engaging in informal
23   investigation, discovery, and litigation. Kenner Decl., ¶¶ 8–10. Given this, both sides
24   were well-informed regarding the strengths and weaknesses of their respective positions
25   at the time the Settlement was reached, so this factor weighs in favor of final approval.

26              **6.  Extent of Discovery Completed and Stage of Proceedings**

27      The sixth factor considers Class Counsel's experience and views about the
28   settlement's adequacy. Reliance on such recommendations is premised on the fact that

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pacific Enterprises Securities Litig.*, 47 F.3d 47 F.3d 373, 378 (9th Cir. 1995).

Class Counsel is qualified and experienced in handling complex wage and hour class actions and has litigated scores of class action lawsuits involving wage and hour issues in both state and federal courts. Kenner Decl., ¶¶ 25–30. Through their investigation, review of discovery materials, law and motion work and mediation, Plaintiff and Class Counsel have a comprehensive understanding of the factual and legal issues involved in this case and believe the Settlement is fair, adequate, and reasonable. Kenner Decl., ¶¶ 8–11. Therefore, this factor also favors final approval of the Settlement.

### 7. The Presence of a Government Participant

This factor does not apply because no governmental entities are involved in the claims here.

### 8. The Class Members' Reaction to the Proposed Settlement

The final factor in the Court's determination of the fairness, adequacy, and reasonableness of the settlement is the reaction of the class to the settlement. *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomm.*, 221 F.R.D. at 528-29.

Class Members' reaction to the Settlement has been extremely favorable. Thus far, not a single Class Member has submitted an objection to or Request for Exclusion the Settlement. Hernandez Decl., ¶¶ 11, 12. Given the overall positive reaction by Class Members to the Settlement, this factor further supports settlement approval.

### B.    The Court Should Approve the PAGA Settlement

The PAGA settlement should be approved. Where PAGA penalties are negotiated in good faith and "there is no indication that [the] amount was the result of self-interest at the expense of other Class Members," such amounts are generally considered

1  reasonable. *Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS

2  33900, at *24 (N.D. Cal. Apr. 3, 2009); *see, e.g.*, *Nordstrom Com. Cases*, 186 Cal. App.

3  4th 576, 579 (2010) ("[T]rial court did not abuse its discretion in approving a settlement

4  which does not allocate any damages to the PAGA claims.").

5      Of course, PAGA gives the Court wide latitude to reduce the amount of civil

6  penalties "based on the facts and circumstances of a particular case" when "to do

7  otherwise would result in an award that is unjust, arbitrary and oppressive, or

8  confiscatory." Cal. Lab. Code § 2699(h). In reducing PAGA penalties, courts have

9  considered issues including whether the employees suffered actual injury from the

10  violations, whether the defendant was aware of the violations, and the employer's

11  willingness to fix the violation. *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 528

12  (2018) (awarding PAGA penalties of only 0.2% of the maximum); *see also Cotter v. Lyft,*

13  *Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016); *Fleming v. Covidien Inc.*, No. ED CV

14  10-01487 RGK (OPX), 2011 WL 7563047, at *4 (C.D. Cal. Aug. 12, 2011).

15      For example, during the penalty phase of trial in *Carrington*, the plaintiff requested

16  PAGA penalties in the amount of about $70 million. The trial court instead awarded only

17  $150,000—or 0.21% of the maximum—stating that this reduction was warranted because

18  imposing the maximum penalty would be "unjust, arbitrary, and oppressive" based on

19  Starbucks's "good faith attempts" to comply with meal period obligations and because

20  the court found the violations were minimal. *Carrington*, 30 Cal. App. 5th at 517. Then,

21  the Court of Appeal affirmed the lower court's reduced award of $150,000. *Id.* at 529.

22      Likewise, in *Covidien*, the Court reduced the potential penalties by over 82%,

23  awarding $500,000 instead of maximum penalties of $2.8 million. *Covidien*, 2011 WL

24  7563047 at *4; *see also Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112,

25  1135-36 (2012) (affirming 30% reduction under specified PAGA claim where the

26  employer produced evidence that it took its obligations seriously); *Elder v. Schwan Food*

27  *Co.*, No. B223911, 2011 WL 1797254, at *5-*7 (Cal. Ct. App. May 12, 2011) (reversing

28  trial court decision denying any civil penalties where violations had been proven,

remanding for the trial court to exercise discretion to reduce, but not wholly deny, civil penalties); *Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752, at \*17 (N.D. Cal. June 15, 2012) (denying PAGA penalties for violation of California Labor Code section 226 as redundant with recovery on a class basis pursuant to California Labor Code section 226, directly); *Aguirre v. Genesis Logistics*, No. SACV 12-00687 JVS (ANx), 2013 WL 10936035 at \*2-\*3 (C.D. Cal. Dec. 30, 2013) (reducing penalty for past PAGA violations from $1.8 million to $500,000, after rejecting other PAGA claims).

Here, the payment to the LWDA will be $11,250, which is 75% of the $15,000 allocated by the parties to the PAGA claim. The remaining 25% ($3,750) will be distributed to the PAGA Members as part of the Net Settlement Amount. The parties have allocated approximately 1.8% of the gross settlement amount to the PAGA claims. A settlement that allocates between 1–2% of the total settlement value to resolve PAGA claims is typical of wage and hour settlements. Indeed, courts have typically approved PAGA settlements in amounts that range between 0.27–1.7% of the total settlement, which is satisfied here.[1]

## VII.  THE COURT SHOULD AWARD ALL REQUESTS FOR ATTORNEYS' FEES AND COSTS AND THE CLASS REPRESENTATIVE'S PAYMENT.

### A.  Class Counsel's Fee Application Is Governed by California Law.

Rule 23(h) of the Federal Rules of Civil Procedure provides that, in a certified

---

[1] *See e.g.: Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-AC, 2016 WL 3549473 at \*3 (E.D. Cal. June 29, 2016) (preliminarily approving $1.95 million settlement containing $10,000 PAGA penalties with $7,500 paid to LWDA); *Garcia v. Gordon Trucking, Inc.*, No. 1:10–CV–0324 AWI SKO, 2012 WL 5364575 at \*7 (E.D. Cal. Oct. 31, 2012) (approving $3.7 million settlement containing $10,000 PAGA penalties with $7,500 paid to LWDA); *Chu v. Wells Fargo Invst., LLC*, No. C 05–4526 MHP, 2011 WL 672645 at \*1 (N.D. Cal Feb. 16, 2011) (approving $6.9 million settlement containing $10,000 PAGA penalties with $7,500 paid to LWDA); *Guerrero v. R.R. Donnelley & Sons Co.*, Case No. RIC 10005196 (Riverside County Super. Ct. July 16, 2013; Judge Matthew C. Perantoni) (gross settlement fund of $1,100,000, of which $3,000 (or 0.3%) was allocated to the settlement of PAGA penalties); *Parra v. Aero Port Services, Inc.*, No. BC483451 (L.A. County Super. Ct. April 20, 2015; Judge Jane

---

class action, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the Parties' agreement." Fed. R. Civ. P. 23(h). In the Ninth Circuit, there are two primary methods to calculate attorneys' fees: the lodestar method and the percentage-of-recovery method. *Id.* at 941–42. Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in the Ninth Circuit, the benchmark percentage is 25 percent. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). The lodestar method requires "multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id.* at 941.

However, where, as here, state law claims predominate, state law governs the right to an award of attorney's fees and the method of calculating the fees. *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). Nonetheless, under both Ninth Circuit and California precedent, a district court has the discretion to award attorney's fees in common fund cases under either the percentage of recovery method or the lodestar method. *Espinoza v. Domino's Pizza, LLC*, No. EDCV-07-1601-VAP(OPx), 2012 WL 5462550, at *2 (C.D. Cal. Nov. 7, 2012); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 506 (2016); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 254 (2001).

Under California law, "[t]he percentage method calculates the fee as a percentage

---

Johnson) (gross settlement fund of approximately $1,458,900, of which $5,000 (or 0.3%) was allocated to the settlement of PAGA penalties); *Thompson v. Smart & Final, Inc.*, No. C497198 (L.A. County Super. Ct. Nov. 18, 2014; Judge William F. Highberger) (gross settlement fund of $3,095,000 of which approximately $13,333 (or 0.4%) was allocated to the settlement of PAGA penalties); *Chavez v. Vallarta Food Enterprises, Inc.*, No. BC490630 (L.A. County Super. Ct. Nov. 10, 2014; Judge William F. Highberger) (gross settlement fund of $1,545,900, of which $10,000 (or 0.6%) was allocated to the settlement of PAGA penalties); *Coleman v. Estes Express Lines, Inc.*, No. BC429042 (L.A. County Super. Ct. Oct. 3, 2013; Judge Kenneth R. Freeman) (gross settlement fund of $1,535,000, of which $1,000 (or 0.1%) was allocated to the settlement of PAGA penalties).

**MOTION FOR FINAL APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS**

share of a recovered common fund or the monetary value of the plaintiffs' recovery." *Laffitte*, 1 Cal. 5th at 489. The lodestar method calculates the fee "'by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate.'" *Id.* (citing *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000)). Once the court has fixed the lodestar, "'it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented.'" *Id.*

The recognized advantages of the percentage of the fund method include "relative ease of calculation, alignment of incentives between class counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging the litigation." *Laffitte*, 1 Cal. 5th at 503. The Ninth Circuit has encouraged district courts to conduct a lodestar cross-check on a percentage fee award. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (2002). As noted by the California Supreme Court, "'[t]he lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved.'" *Laffitte*, 1 Cal. 5th at 504 (citing *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)).

## B. Class Counsel Is Entitled to Reasonable Attorneys' Fees and Costs Under the California Labor Code and PAGA.

Class Counsel is entitled to statutory recovery of fees and costs pursuant to California Labor Code §§ 218.5, 1194, 2699(g)(1) and Code of Civil Procedure § 1021.5.

### 1. Class Counsel is Entitled to Attorneys' Fees Under the California Labor Code.

Class Counsel is entitled to recover attorney's fees and costs under Labor Code § 1194(a), which provides that:

[A]ny employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage

or overtime compensation, including interest thereon, reasonable attorney's
fees, and costs of suit.

Because this litigation culminated in a settlement that provides for a recovery of
unpaid wages, including unpaid overtime compensation and unpaid expense
reimbursements for almost 400 employees in California, Plaintiff is entitled to recover
reasonable attorneys' fees under California Labor Code § 1194(a). Class Counsel is
likewise entitled to recover reasonable attorneys' fees and costs under Labor Code section
218.5 for the claims for "the nonpayment of wages."

### 2. Class Counsel is Entitled to Attorneys' Fees Under PAGA.

Plaintiff is also entitled to a fee award under California's private attorneys general
statute. Code of Civil Procedure § 1021.5. An award of attorney fees is proper under
section 1021.5 if "(1) plaintiffs' action 'has resulted in the enforcement of an important
right affecting the public interest,' (2) 'a significant benefit, whether pecuniary or
nonpecuniary, has been conferred on the general public or a large class of persons' and
(3) 'the necessity and financial burden of private enforcement are such as to make the
award appropriate.'" *Press v. Lucky Stores*, 34 Cal. 3d 311, 317–18 (1983). The
fundamental objective of the statute is "to encourage suits enforcing public policies by
providing substantial attorneys' fees to successful litigants in such cases." *Graham v.
DaimlerChrysler Corp.*, 34 Cal. 4th 553, 565 (2004).

This action resulted in the enforcement of important rights affecting the public
interest, as Plaintiff sought to enforce Class Members' rights to recover statutory wages
arising out of Defendant's failure to pay all meal and rest period premiums and overtime
compensation due, among other things. *Moore v. Indian Spring Channel Gold Mining
Co.*, 37 Cal. App. 370, 379-380 (1918) (recognizing that the "[d]elay of payment or loss
of wages results in deprivation of the necessities of life, suffering inability to meet just
obligations to others, and, in many cases may make the wage earner a charge upon the
public"); *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094, 1113 (2007)
(noting that "health and safety considerations (rather than purely economic injuries) are
what motivated the IWC to adopt mandatory meal and rest periods in the first place").

**MOTION FOR FINAL APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS**

1    This action also conferred a significant benefit on a large class of persons covered

2    by the Settlement. *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 703

3    (2006) (holding that "[a]ttorney fees may be awarded under Code of Civil Procedure

4    section 1021.5 for consumer class action suits benefiting a large number of people").

5    Here, the class is comprised of 398 Class Members. Hernandez Decl., ¶ 5. The Settlement

6    provides a significant monetary benefit, in that it permits all persons who worked for

7    Defendant in non-exempt positions in California during the Class Period to obtain

8    compensation for unpaid wages as well as their portion of the PAGA penalties.

9    Settlement Agreement, ¶¶ 6, 9, 19.

10    Finally, the necessity and financial burden of private enforcement render an award

11    appropriate. Without the incentive of an attorney's fee award, Plaintiff could not have

12    afforded to hire counsel to pursue this case, as the cost of litigating this matter far

13    outweighed Plaintiff's potential recovery. *Ryan v. California Interscholastic Fed'n*, 94

14    Cal. App. 4th 1033, 1044 (2001) ("As to the necessity and financial burden of private

15    enforcement, an award is appropriate where the cost of the legal victory transcends the

16    claimant's personal interest; in other words, where the burden of pursuing the litigation

17    is out of proportion to the plaintiff's individual stake in the matter").

18    Thus, an award of reasonable attorney's fees under California Code of Civil

19    Procedure section 1021.5 is appropriate here.

20    **C.    Class Counsel's Requested Fee Award Is Reasonable Under the**

21    **Percentage of the Fund Method.**

22    In this case, the Settlement resulted in the creation of a common fund from which

23    all Participating Class Members are to be paid. As a result, Plaintiff is entitled to recover

24    attorney's fees based on a percentage of that fund. *Laffitte*, 1 Cal. 5th at 506 (approving

25    fee of 33 1/3% of the common fund). Plaintiff's request for attorney's fees of $206,250,

26    which represents 25% of the total settlement fund of $825,000, is reasonable and justified.

27    The California Supreme Court has held that "when a number of persons are

28    entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs

**MOTION FOR FINAL APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS**

1    for the benefit of all results in the creation or preservation of that fund, such plaintiff or

2    plaintiffs may be awarded attorneys' fees out of the fund." *Serrano v. Priest*, 20 Cal. 3d

3    25, 34 (1977) (internal citations omitted).

### 1. The Percentage Should Be Calculated Based on the Total Settlement Fund.

6        Courts have concluded that it is proper to calculate the fee award as a percentage

7    of the total settlement fund, including attorney's fees, litigation costs, and administrative

8    costs. *Powers*, 229 F.3d at 1258 (rejecting objector's argument that a fee award in a

9    securities settlement should be based on "net recovery," which does not include "expert

10    fees, litigation costs, and other expenses"); *Vizcaino*, 290 F.3d at 1052 (district court did

11    not abuse its discretion in approving class counsel's fee application based upon a

12    percentage of the total settlement fund, including attorney's fees, costs, and incentive

13    awards); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015)

14    ("district court did not abuse its discretion in calculating the fee award as a percentage of

15    the total settlement fund, including notice and administrative costs, and litigation

16    expenses"); *see also* Manual for Complex Litig., 4th ed., § 21.7 (advocating use of the

17    total settlement fund, including attorney's fees and expenses, "to measure whether the

18    portion allocated to the class and to attorney fees is reasonable"). The rationale for this

19    method of calculation is that "a fee awarded against the entire judgment will shift the

20    costs of litigation to each absentee in the exact proportion that the value of his claim bears

21    to the total recovery." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479–80 (1980).

22        Here, the amount of attorneys' fees requested, 25% of the total settlement fund, is

23    well within the range of percentages generally awarded by courts in class actions resulting

24    in the creation of a common fund. *See, e.g. Laffitte*, 1 Cal.5th at 506. While there is no

25    specific benchmark under California law, California superior courts have frequently

26    awarded percentage fees of 33.33% or more in common fund cases litigated by Class

27    Counsel involving wage and hour claims like those here. Kenner Decl., ¶ 24.

28

**MOTION FOR FINAL APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS**

## 2. The Result Obtained for the Class

"The result achieved is a significant factor to be considered in making a fee award." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (C.D. Cal. Jun. 10, 2005); *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained"). In evaluating the results achieved for the class, courts consider the value of the individual awards class members will receive rather than the size of the settlement fund. *See Fernandez v. Victoria Secret Stores, LLC*, No. CV-06-04149-MMM (SHx), 2008 WL 8150856 at *11 (C.D. Cal. Jul. 21, 2008).

Here, the results obtained by Class Counsel warrant an award of the 25% benchmark. The claims in this case concern, among other things, Defendant's failure to pay meal period and premium wages and a portion of the overtime premium wages. "These types of claims would not generally produce substantial individual damage awards." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013). Recoveries here would inevitably be modest, as they are largely based on unpaid meal period and rest break premiums and the differential between overtime premiums actually paid and the slightly higher premiums that Class Members should have been paid had Defendant included all required forms of compensation in its regular rate calculations. Nevertheless, each Class Member will receive from the total recovery of $825,000 an average settlement payment of $1,432.16, with the maximum settlement allocation estimated to be $3,266.29. Hernandez Decl., ¶ 14. A comparison of the average settlement award here to other actions in the Ninth Circuit for wage and hour violations highlights the significant success achieved by Class Counsel. *See, e.g., Barbosa*, 297 F.R.D. at 448-51 (court deemed recovery of $1,290,000 for 1,837 employees a "favorable result" and awarded fees amounting to 33 1/3% of the total settlement). The Court should find that the results achieved are excellent, especially since there are no objections by Class Members to the settlement amount or to the attorney's fees requested. *Barbosa*, 297 F.R.D. at 44. In light of the significant result achieved by Plaintiff for the Class, this factor favors granting the requested fee award.

**MOTION FOR FINAL APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS**

Evaluation of the value to the class of the result obtained in this case should also take into consideration that the result was obtained relatively quickly—about seven months after filing—hereby providing a concomitantly swift payment of the benefit to the Class. Because the settlement was reached fairly soon following investigation, the filing of the complaint and discovery, the Class Members will get their substantial recoveries soon instead of having to wait through years of uncertain litigation. This factor also favors granting the requested fee award.

### 3.  The Effort Expended by Class Counsel

This factor largely duplicates the lodestar calculation, which reflects the hours Class Counsel spent litigating the case. *Fernandez*, 2008 WL 8150856 at *12. There is no doubt that Class Counsel investigated and vigorously prosecuted the claims. Class Counsel and their experts analyzed a substantial amount of information that Defendant produced in response to informal discovery requests in preparation for mediation. Class Counsel's research enabled them to pinpoint the relevant issues and claims and to assess potential liability and damages. These efforts resulted in the parties having a clear view of the strengths and weaknesses of their respective cases and achieving a resolution on favorable terms, as was evidenced during mediation that led to this settlement. Kenner Decl., ¶¶ 8–10.

More specifically, among other work, Class Counsel's efforts to investigate, prosecute, and engage in mediation have involved: (a) multiple meetings and conferences with Plaintiff; (b) exchange of discovery informally; (c) analyzing the legal positions taken by Defendant; (d) investigating the viability of class treatment of the claims asserted in this Action; (e) talking to class members; (f) researching applicable law as to the actual and potential claims and defenses asserted in the Action; (g) assembling and analyzing data to evaluate exposure and calculate damages; (h) analyzing liability as to the alleged causes of action and evaluating potential classwide damages both internally and by retaining an expert; (i) engaging in a full, extended day of mediation and multiple subsequent arms'-length negotiations; and (j) undertaking all efforts to effect the agreed

**MOTION FOR FINAL APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS**

1    upon terms of the Settlement. Kenner Decl., ¶ 9.

2        Class Counsel thus expended significant time performing this work and did not

3    sacrifice due diligence in achieving an efficient resolution of this case. Indeed, Class

4    Counsel's lodestar does not include paralegal hours or the estimated 30–50 hours Class

5    Counsel will expend overseeing the administration of the Settlement, answering

6    questions from Class Members about the Settlement, and preparing for and attending the

7    final fairness hearing. Kenner Decl., ¶ 21. Class Counsel's persistence and success in

8    prosecuting Plaintiff's claims in an efficient manner merits an award of the 25%

9    benchmark. Kenner Decl., ¶¶ 8–11. This factor supports the requested award of attorney's

10   fees under the percentage of recovery method.

11                  **4. The Experience and Skill of Class Counsel**

12       The quality of Class Counsel's experience and skill is demonstrated by the

13   exceptional result achieved. As shown in the accompanying Declaration of Cheryl A.

14   Kenner, Class Counsel are experienced litigators in the field of wage and hour class

15   actions and are several seasoned trial attorneys; they put the full use of their skill and

16   experience to work in the service of Plaintiff and Class Members in this case. Kenner

17   Decl., ¶¶ 8–11, 25–30. Importantly, Defendant was represented by experienced and

18   skilled attorneys from a law firm (Littler Mendelson, P.C.) with a strong reputation for

19   vigorous advocacy in the defense of complex employment class action cases. Kenner

20   Decl., ¶ 14. Class Counsel's ability to obtain this Settlement in the face of such formidable

21   legal opposition confirms the quality of Class Counsel's representation. *Barbosa*, 297

22   F.R.D. at 449 ("[t]he quality of opposing counsel is important in evaluating the quality

23   of Class Counsel's work") (citing *In re Equity Funding Corp. Sec. Litig.*, 438 F.Supp.

24   1303, 1337 (N.D. Cal. 1977)).

25       The Court should find that the experience and specialized skill of Class Counsel

26   in this area of the law was an asset to Class Members. Class Counsel's "extensive

27   investigation, comprehensive discovery practice, and skillful preparation resulted in a

28   favorable Settlement for the Class." *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-

                                        27

**MOTION FOR FINAL APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS**

LHK, 2013 WL 496358, at *2 (N.D. Cal. Feb. 6, 2013). Class Counsel advanced the costs associated with litigating this matter, including expert analysis and mediation fees, in order to fully and competently prepare this case for the benefit of the Class. Kenner Decl., ¶ 12.; Ex. B. These factors weigh in favor of approval of the fee award.

### 5. The Complexity of the Issues

This case was particularly complex for a variety of reasons. First, there were multiple nonexempt positions that required a variety of theories to explain the alleged noncompliance with meal period and rest break laws, among other laws. Second, Defendant vigorously defended its position that it had compliant policies and implemented measures to compensate employees for missed meal periods, ensure employees were clocking in before beginning work and while traveling from site to site. Third, Defendant set forth various methods it had undertaken to improve its employment practices. The Parties fully briefed these issues for mediation. Fourth, Defendant has a complex compensation structure that involves a myriad of bonuses, some of which should and some of which should not be included in the regular rate of pay for the purpose of calculating overtime. Finally, Class Counsel was required to analyze a substantial amount of data pertaining to a large putative class and consult with an expert statistician. Kenner Decl., ¶¶ 9, 10, 12. This factor also weighs in favor of approving the benchmark.

### 6. Class Counsel's Risk of Nonpayment

"Courts consistently recognize that the risk of non-payment or reimbursement of expenses is a factor in determining the appropriateness of class counsel's fee award." *Heritage*, 2005 WL 1594403, at *21. Here, Class Counsel proceeded entirely on a contingency basis while paying for all expenses incurred, and invested time, effort, and money with no guarantee of any recovery. Kenner Decl., ¶ 20. Class Counsel faced substantial risk of non-payment for hundreds of hours of work and thousands of dollars in expenses because of the uncertainty of prevailing on Defendant's anticipated motion to compel arbitration, obtaining and maintaining class certification, and of establishing liability. Plaintiff brought this action against a major corporation with extensive

**MOTION FOR FINAL APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS**

resources. Class Counsel prosecuted this case knowing there was a chance that Defendant could prevail on its anticipated motion to compel arbitration in which case all class allegations would be extinguished. Class Counsel also appreciated that, even if Plaintiff prevailed, the case would likely take years to bring to trial and would not be resolved without an appeal. This risk of no recovery on a classwide basis in complex wage and hour class actions is very real. From the outset, Defendant vehemently contested liability and it continues to do so today. In light of these substantial risks and obstacles, Class Counsel thus undertook Plaintiff's representation with the hope that they would receive a risk enhancement if they prevailed. Kenner Decl., ¶ 20. Having nevertheless obtained an excellent result for the Class, Class Counsel should be fully compensated for their work and the risk involved.

In cases where the recovery is far from certain, as here, an award of attorney's fees constituting 25% or more of the common fund is appropriate. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994) (finding district court's failure to apply multiplier to lodestar calculation was abuse of discretion where the case was "fraught with risk and recovery was far from certain"); *Vizcaino*, 290 F.3d at 1048. In sum, Class Counsel's requested fee award is justified by the significant risk assumed in litigating this case on a contingency basis without any guarantee of compensation. *Graham*, 34 Cal. 4th at 580 ("A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services.") (internal quotations omitted); *Barbosa*, 297 F.R.D. at 449 ("Like this case, where recovery is uncertain, an award of one-third of the common fund as attorneys' fees has been found to be appropriate") (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000); *Heritage*, 2005 WL 1594403, at *19, n.14.

### 7. The Reaction of the Class

The reaction of the class to the Settlement was overwhelmingly positive in that no requests for exclusion and no objections were received. Hernandez Decl., ¶¶ 11, 12. This

reaction strongly supports an increase in the benchmark percentage. "Numerous courts have noted that the lack of objection from members of the class is one of the most important" factors in determining the reasonableness of a requested fee. *In re Prudential Sec. Inc. Ltd. P'ships. Litig.*, 985 F.Supp. 410, 416 (S.D. N.Y. 1997) (internal citations omitted); *Theriot v. Celtic Ins. Co.*, No. C-10-04462-LB, 2011 WL 1522385, at *6 (N.D. Cal. Apr. 21, 2011) ("The fact that no members of the 390-person class objected to the proposed 33% fee award—which was also communicated in the notice—supports an increase in the benchmark rate") (citing *In re Omnivision Tech., Inc.*, 559 F.Supp.2d 1036, 1048 (N.D. Cal. 2008)).

### 8. Comparison with the Lodestar

A lodestar cross-check also weighs in favor of an award at the 25% benchmark. As explained below, Class Counsel's current lodestar of $154,555, which does not include paralegal hours or 30-50 hours estimated to be expended through final approval and the end of the litigation, supports the requested fee award of $205,250. This factor supports the fairness and reasonableness of a fee award of 25% of the total settlement fund. *Barbosa*, 297 F.R.D. at 454 (concluding that a 33 1/3% fee award, necessitating a 1.06 multiplier of the lodestar, is reasonable and commensurate with other wage and hour class actions); *Fernandez*, 2008 WL 8150856 at *16 (finding fair and reasonable a 34% award, representing application of a risk multiplier of about 1.82 to the lodestar amount).

Class Counsel's lodestar yields a 1.33 multiplier, which is well within the range for reasonable multipliers. *See Vizcaino*, 290 F.3d 1043, 1052–54 (9th Cir.), *cert. denied*, 537 U.S. 1018 (2002) (surveying multipliers in 23 class action suits and recognizing that courts applied multipliers of 1.0 to 4.0 in 83% of surveyed cases); *Parkinson v. Hyundai Motor Am.*, 796 F.Supp.2d 1160, 1170 (C.D. Cal.2010) (observing that "multipliers may range from 1.2 to 4 or even higher"); *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, *4 (N.D.Cal.2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."). Thus, the lodestar cross-check further supports the attorney's fees request. *See Laffitte*, 1 Cal.5th at 496, ("If the implied multiplier is

**MOTION FOR FINAL APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS**

1  reasonable, then the cross-check confirms the reasonableness of the percentage-based

2  fee[.]").

3        Taking all of the relevant factors into consideration, the Court should conclude

4  that Plaintiff has shown circumstances warranting an award of fees at the 25% benchmark

5  and approve the requested fees in the amount of $206,250, which is 25 percent.

6        **D.**     **Class Counsel's Requested Fee Award Is Reasonable Based on a**

7              **Lodestar Cross-Check.**

8        Courts use the lodestar as a cross-check on the reasonableness of the percentage

9  of the fund approach. *See Laffitte*, 1 Cal. 5th at 496; *Barbosa*, 297 F.R.D. at 448;

10 *Fernandez*, 2008 WL 8150856 at *14. Under the lodestar method, the court considers the

11 number of hours reasonably spent on the litigation multiplied by a reasonable hourly rate

12 for each attorney. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131–32 (2001); *PLCM Group,*

13 *Inc. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000); *see also McGrath v. County of Nevada*,

14 67 F.3d 248, 252 (9th Cir.1995). The moving party meets its burden in this regard by

15 submitting "declarations evidencing the reasonable hourly rate for their services and

16 establishing the number of hours spent working on the case," as "California case law

17 permits fee awards in the absence of detailed time sheets." *Wershba*, 91 Cal. App. 4th at

18 254-255; *Mardirossian & Assocs., Inc. v. Ersoff*, 153 Cal. App. 4th 257, 269 (2007)

19 (same) (citing *Steiny & Co. v. California Electric Supply Co.*, 79 Cal. App. 4th 285, 293

20 (2000); *Laffitte*, 1 Cal. 5th at 505 (trial court properly exercised its discretion to perform

21 the lodestar cross-check "using counsel declarations summarizing overall time spent

22 rather than demanding and scrutinizing daily time sheets in which the work performed

23 was broken down by individual task").

24       Similarly, under federal law, "[w]here the lodestar method is used as a cross-check

25 to the percentage method, it can be performed with a less exhaustive cataloguing and

26 review of counsel's hours." *Barbosa*, 297 F.R.D. at 451; *In re Rite Aid. Corp. Sec. Litig.*,

27 396 F.3d 294, 306 (3d Cir. 2005) ("The lodestar cross-check calculation need entail

28 neither mathematical precision nor bean-counting"); *In re Immune Response Sec. Litig.*,

497 F.Supp.2d 1166, 1176 (S.D. Cal. 2007) ("Although counsel have not provided a detailed cataloging of hours spent, the Court finds the information provided to be sufficient for purposes of lodestar cross-check").

The lodestar figure may be augmented or diminished by the court taking into account various multiplier factors, including the time and labor required, the novelty and difficulty of the questions involved, the skill requisite to perform the legal service properly, the preclusion of other employment by the attorney due to acceptance of the case, and whether the fee is fixed or contingent. *Ramos v. Countrywide Home Loans, Inc.*, 82 Cal. App. 4th 615, 622 (2000), citing *Serrano v. Priest*, 20 Cal. 3d 25, 48–49 (1977). "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299). Here, Class Counsel's lodestar is $154,555 based on 227.7 attorney hours billed by S&A at customary hourly rates. Kenner Decl., ¶ 22.

### 1. Class Counsel's Hourly Rates Are Reasonable.

Class Counsel's hours are to be multiplied by a "reasonable hourly rate" to generate the lodestar figure. *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556 (2009). To determine the reasonable hourly rate, the court must look to the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008); *accord MBNA American Bank, N.A. v. Gorman*, 147 Cal. App. 4th 1, 13 (2006) ("[I]n assessing a reasonable hourly rate, the trial court is allowed to consider the attorney's skill as reflected in the quality of work, as well as the attorney's reputation and status."). Courts may "find hourly rates reasonable based on evidence of other courts approving similar rates." *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010). "Affidavits of the plaintiff's attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly

**MOTION FOR FINAL APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS**

those setting a rate for the plaintiff's attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *Bouman v. Block*, 940 F.2d 1211, 1235 (9th Cir. 1991) (the submission of "declarations stating that the rate was the prevailing market rate in the relevant community [was]… sufficient to establish the appropriate rate for lodestar purposes"). As a general rule, the forum district represents the relevant legal community. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

Class Counsel's rates are in line with the current prevailing billing rates in the Los Angeles area. Kenner Decl., ¶ 22. *See also Rodriguez v. County of Los Angeles*, 96 F.Supp.3d 1012, 1023 (C.D. Cal. 2014) (approving attorney rates in 2014 from $500 per hour for attorney with 6 years of experience to $975 per hour for attorney practicing 45 years). The requested rates are also within the range previously approved by various courts in the cases Class Counsel has litigated. Kenner Decl., ¶ 24. Class Counsel are experienced litigators who primarily practice in employment law, with a substantial wage and hour class action practice. Kenner Decl., ¶¶ 25–29. Given the skill and experience of Class Counsel and the excellent result achieved for the Class Members, Class Counsel's hourly rates are reasonable.

### 2. Class Counsel's Hours Are Reasonable.

In determining whether the number of hours expended on the litigation was reasonable, the court must determine that the "time spent was reasonably necessary and that [] counsel made 'a good faith effort to exclude from the fee request hours that are excessive, redundant, or otherwise unnecessary.'" *Jordan v. Multnomah County*, 815 F.2d 1258, 1263, n.8 (9th Cir. 1987) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 434 (1983)). "[T]he standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982). In determining the reasonableness of the hours expended on the litigation, "the district court should take into account the reality that some amount of duplicative work is

33

1  'inherent in the process of litigating over time.'" *Stetson v. Grissom*, 821 F.3d 1157, 1166

2  (9th Cir. 2016) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir.

3  2008)). The district court "should defer to the winning lawyer's professional judgment as

4  to how much time he was required to spend on the case." *Moreno*, 534 F.3d at 1112

5  (noting that "[l]awyers are not likely to spend unnecessary time on contingency fee cases

6  in the hope of inflating their fees. The payoff is too uncertain, as to both the result and

7  the amount of the fee."); *see also Guam v. Soc'y of Obstetricians & Gynecologists v. Ada*,

8  100 F.3d 691, 700 (9th Cir.1996) ("[A]lthough it may be easy, in hindsight, to tout this

9  as an easy victory, plaintiffs cannot be faulted for their thoroughness under the

10  circumstances."). "An attorney's sworn testimony that, in fact, it took the time claimed '.

11  . . is evidence of considerable weight on the issue of the time required . . . .'" *Blackwell*

12  *v. Foley*, 724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010) (quoting *Perkins v. Mobile*

13  *Housing Bd.*, 847 F.2d 735, 738 (11th Cir. 1988)).

14  　　　Class Counsel expended a significant amount of time investigating and litigating

15  the case for almost a year to achieve the excellent result on behalf of the Class. The

16  summary of their work ranges from investigation (from legal research of Plaintiff's

17  claims, review of Plaintiff's personnel and payroll records, interviews of Plaintiff), to

18  discovery (extensive data production and analysis), review of hundreds of pages of

19  Defendant's employment policies, substantial preparations for class certification motion

20  work, preparing for court hearings, participating in numerous conferences and

21  corresponding with Defendant's counsel; retaining and consulting an expert statistician

22  to analyze the time and payroll records and other employment records and performing

23  damages calculations based on those records, research and preparation of a mediation

24  brief and damages analyses; participation in an extended, full-day mediation session, in

25  addition to ongoing settlement discussions; drafting, negotiating, and revising the

26  Memorandum of Understanding and Settlement Agreement; researching and drafting the

27  Motions for Preliminary and Final Approval and accompanying declarations; and

28  communicating with Defendant's counsel and ILYM to effectuate the terms of the

1  Settlement and to monitor the claims process. Kenner Decl., ¶ 19.

2      To date, Class Counsel has spent approximately 227.7 attorney hours litigating

3  this case and estimates that they will spend approximately 30-50 additional hours through

4  final approval.[2] Kenner Decl., ¶ 22. These hours were necessary and reasonable to

5  achieve the excellent result on behalf of the Class. Kenner Decl., ¶ 22. The attorney hours

6  do not include the dozens of hours expended by Class Counsel's staff members. Kenner

7  Decl., ¶ 22. Thus, Class Counsel's hours are reasonable.

8      ### 3.  Application of a Positive Multiplier Is Appropriate.

9      After the court determines the lodestar value, the court may enhance the lodestar

10  by applying a multiplier to take into account the contingent nature and risk associated

11  with the action. *Ketchum*, 24 Cal. 4th at 1130, 1137 (2001); *Graham*, 34 Cal. 4th at 582.

12  California courts have a more "permissive attitude on the use of multipliers" than their

13  federal counterparts. *Lealao*, 82 Cal. App. 4th at 43; *see Weeks v. Baker & McKenzie*, 63

14  Cal. App. 4th 1128, 1173 (1998) (finding that "adjustment from the lodestar figure will

15  be far more common under California law than under federal law."); *Flannery v.*

16  *California Highway Patrol*, 61 Cal. App. 4th 629, 646 (1998). Under California law,

17  "[m]ultipliers can range from 2 to 4 or even higher" and are routinely granted. *Wershba*,

18  91 Cal. App. 4th at 254-255; *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 (2008)

19  (upholding 2.5 multiplier). Some of the factors courts consider when determining whether

20  to apply a multiplier are: "(1) the novelty and difficulty of the questions involved, (2) the

21  skill displayed in presenting them, (3) the extent to which the nature of the litigation

22  precluded other employment by the attorneys, (4) the contingent nature of the fee award."

23  *Ketchum*, 24 Cal.4th 1122 at 1132 (citations omitted).

24      In *Ketchum*, the California Supreme Court held that fee enhancement in

25  contingency cases is necessary to (1) fully compensate counsel for the "loan" of legal

26

27      ---
[2] The Ninth Circuit has repeatedly held that time spent by counsel establishing the right

28  to a fee award is compensable. *See, e.g. D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1387–88 (9th Cir. 1990).

**MOTION FOR FINAL APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS**

services in light of the inherent high risk of "default" posed by losing the case, and (2) encourage competent counsel to take on fee award cases. *Ketchum*, 24 Cal.4th at 1132–33. As the Court noted, "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." *Id.* at 1133 (citations omitted); *see Greene v. Dillingham Construction N.A., Inc.*, 101 Cal. App. 4th 418, 426 (2002) (holding that trial court erred by refusing to consider contingent risk as a factor in the decision to apply a multiplier). Similarly, the Ninth Circuit recently held that "[t]he district must apply a risk multiplier to the lodestar 'when (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky.'" *Stetson*, 821 F.3d at 1166 (emphasis in original) (quoting *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 740 (9th Cir. 2016)).

Class Counsel has been investigating and litigating this case now for almost three years with no payment, expending significant time and resources which could have been directed towards other cases and assumed considerable risk given the uncertain proposition these types of cases entail. Kenner Decl., ¶ 20. Accordingly, Plaintiffs request that the Court award Class Counsel the requested fees of $206,250.

### E. Class Counsel's Request for Reimbursement of Costs Is Reasonable.

Because Plaintiff's claim for attorney's fees arises under California substantive law, the Court applies California law on costs rather than Local Rule 54. *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1064 (9th Cir. 2003). California Labor Code sections 1194 and 2802 provide that an employee-plaintiff is entitled to recover costs of suit in a civil action to recover unpaid wages and unreimbursed expenses.

Here, Class Counsel estimated their costs would not exceed $25,000. Settlement Agreement, ¶ 43d. To date, Class Counsel has incurred a total of $19,867.75 in unreimbursed costs and will continue to incur costs through final approval. Kenner Decl., ¶¶ 23, Ex. B. Because these costs were reasonably incurred, the Court should award Class

**MOTION FOR FINAL APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS**

1    Counsel $19,867.75 in costs to be paid out of the common fund.

2    **VIII. THE COURT SHOULD AWARD THE CLASS REPRESENTATIVE A**

3    **REASONABLE ENHANCEMENT PAYMENT.**

4           The Settlement provides for an Enhancement Payment of up to $5,000 to be paid

5    to the Class Representative. Settlement Agreement, ¶ 43c. The purpose is to provide an

6    additional incentive payment, taking into consideration the risks, time, and effort in

7    coming forward to fulfill all the duties associated with being a class representative.

8    Awarding incentive awards to compensate named plaintiffs in class actions has been

9    specifically recognized. *See, e.g.*, *Clark v. American Residential Services, LLC*, 175

10   Cal.App.4th 785, 804 (2009) (incentive awards to named plaintiff appropriate for

11   participation in class action); *Bell v. Farmers Ins. Exchange*, 115 Cal.App.4th 715, 726

12   (2004) (upholding "service payments" to named plaintiffs for their efforts in bringing

13   class case). Incentive awards are "intended to compensate class representatives for work

14   done on behalf of the class, to make up for financial or reputational risk undertaken in

15   bringing the action, and, sometimes, to recognize their willingness to act as a private

16   attorney general.'" *Cellphone Termination Fee Cases*, 186 Cal.App.4th 1380, 1394

17   (2010) (approving incentive award of $10,000).

18          The Class Representative Enhancement Payment is intended to compensate

19   Plaintiff Rubio as the Class Representative for his willingness to accept the

20   responsibilities of representing the interests of all class members, taking into

21   consideration the risks he assumed and the time and effort he expended in coming

22   forward to provide invaluable information throughout the litigation. Kenner Decl., ¶ 16;

23   Declaration of Ricardo Rubio ("Rubio Decl."), ¶¶ 4–8. Plaintiff Rubio spent a

24   considerable amount of time and effort on this case, including discussions with Class

25   Counsel on multiple occasions, responding to multiple inquiries from Class Counsel, and

26   he remained in constant contact with Class Counsel regarding this lawsuit; he remained

27   engaged in the litigation at all times. Kenner Decl., ¶ 17; Rubio Decl., ¶¶ 4–7.

28          Plaintiff also risked potential judgment against him had Defendant won. Rubio

**MOTION FOR FINAL APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS**

1    Decl., ¶ 8. In class action losses, class representatives are deemed the losing party that is

2    liable for the prevailing party's costs. *Earley v. Super. Ct.*, 79 Cal.App.4th 1420, 1433–

3    34 (2000). Finally, Plaintiff also risked that this lawsuit would negatively impact future

4    employment opportunities, particularly since retaliation can extend outside the immediate

5    workplace. *See, e.g.*, *Staton*, 327 F.3d at 977. As such, Plaintiff respectfully requests that

6    this Court approve his Enhancement Payment in the amount of $5,000.

7    **IX.**    **THE COURT SHOULD AWARD ILYM'S FEES.**

8        ILYM's fees in the amount of $7,500 are reasonable, given the tasks performed

9    and remaining to be performed. Hernandez Decl. ¶¶ 3, 4, 6, 7–10, 15. No Class Members

10    objected to the requested costs of administration. *Id.* Accordingly, Plaintiff requests that

11    the Court approve ILYM's fees in the amount of $7,500.

12    **X.**    **DEFENDANT DOES NOT OPPOSE THIS MOTION.**

13        Since this Settlement has been stipulated to, Defendant has not filed an opposition.

14    **XI.**    **CONCLUSION**

15        After weighing the benefits of this Settlement against the uncertainty and risks

16    of continued litigation, and after sufficient negotiations and confirmatory discovery,

17    the Parties and their counsel have concluded that the proposed Settlement is fair,

18    adequate, and reasonable and warrants this Court's final approval. Accordingly, for the

19    foregoing reasons, Plaintiff requests that the Court grant final approval of the Settlement

20    and enter the proposed Order and Judgment against Defendant in accordance with the

21    terms of the Settlement.

22

23    Dated:  July 30, 2021           **SHEGERIAN & ASSOCIATES, INC.**

24

25                             By: */s/ Cheryl Kenner*

26                             Cheryl A. Kenner

27                             Attorneys for Plaintiff Ricardo Rubio and all
                                    others similarly situated and aggrieved

28

**MOTION FOR FINAL APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS**